# Kelley *v.* Lehigh Valley Railroad Company, Appellant.

*Railroads—Passengers—Assault on passenger by brakeman— Case for jury—New trial.*

1. In an action by a passenger against a railroad company to recover damages for personal injuries from blows inflicted upon him by defendant's brakeman with a ventilator stick, while he was alighting from a train, a verdict and judgment for the plaintiff will not be set aside and a new trial granted, where the evidence is conflicting as to whether the plaintiff misconducted himself, and as ·to whether the brakeman was acting in self defense, and this is the case although the court as a juror might have been strongly inclined to find for the defendant, and although the defendant's case was supported by a greater number of witnesses.

2. The weight of the evidence is not to be determined by the number of witnesses nor is the verdict to be set aside because the greater number of witnesses testified against the finding.  The credibility of witnesses is for the jury, and their manner, their motive, their bias, the inherent improbability of their story, or the want of accurate recollection may discredit their testimony and justify a jury in disregarding it altogether.

*Practice C. P.—Trial—Jury—Conduct of tipstaff—New trial.*

3. A new trial will not be granted because of the alleged re-

fusal to report a request by the jury to the judge for further instructions, because such a request was made on a Sunday, where it appears that although one or more of the jurors may have desired further instructions yet there is nothing to show an actual request by the jurors to the tipstaff, and no juryman, when their sealed verdict was opened made objection to the conduct of the tipstaff; nor will a new trial be granted on the ground alleged that a juror had told the tipstaff that his health would be endangered by the jury remaining out another night, where there is no evidence to show that any such statement was made, or that the juror was not in good health, and the juror himself when the sealed verdict was opened, made no complaint of the conduct of the tipstaff.

*Railroads—Passenger—Assault of passenger—Brakeman—Evidence—Harmless error.*

4. In an action by a passenger against a railroad company to recover damages for personal injuries sustained by an alleged assault by a brakeman, it is harmless error, if it is error at all, to permit a witness to testify as to the duty of a brakeman, if the witness testified to nothing that conflicted with the duties prescribed by the rules of the defendant company which were in evidence.

Argued March 11, 1912. Appeal, No. 253, Jan. T., 1911, by defendant from judgment of C. P. Bradford Co., Sept. T., 1909, No. 265, on verdict for plaintiff in case of Albert L. Kelley v. Lehigh Valley Railroad Company. Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for personal injuries, sustained by an alleged assault by one of defendant's brakemen. Before FANNING, P. J.

The facts are stated in the opinion of the Supreme Court.

The jury returned a verdict for plaintiff for $2,000.

The defendant moved for a new trial assigning, inter alia, the following reasons:

"IV. The verdict is against the weight of evidence and charge of the court."

"V. That during the consideration of the above

case by the jury, on Sunday, February 27, a request was made by some of the jurors to Charles Daugherty, tipstaff in charge, that they desired to have the testimony of Thomas O'Donnell read to them, and was informed by the tipstaff, that 'that could not be done, that the court would not do any business on Sunday.' And further, that the tipstaff was notified by the jurors that they could not agree, and asked the tipstaff in charge to call the court in, so they could be discharged, and the tipstaff notified them, 'they would have to stay until Monday morning, as the court would not do any business on Sunday,' and that A. J. Fisher, one of the jurors, was sick, and in poor health and considering that for him to remain out, under the circumstances, another night, would endanger his health, and was therefore compelled to agree to a verdict, rather than to endanger his health, and possibly, his life."

"VI.   That the verdict is not supported by the testimony in the case. That the clear weight of testimony was for the defendant, and therefore the verdict is legally and morally wrong, and should be set aside."

*Errors assigned* were (1, 2) refusal of new trial and (3) ruling on evidence referred to in the opinion of the Supreme Court.

*R. W. Barrett,* with him *E. H. Boles,* for appellant.— We think the court erred in not setting aside the verdict and granting to the defendant a new trial, as the verdict was clearly against the weight of the credible evidence; and such refusal under the reasons assigned, was an abuse of the court's discretion: Greb v. Pennsylvania R. R. Co., 41 Pa. Superior Ct. 61; Rudgeair v. Reading Traction Co., 180 Pa. 333; Pitts., Allegheny & Man. Passenger Railway Co. v. Donahue, 70 Pa. 119; Zuber v. Geigar, 2 Yeates 522; Chahoon v. Hackley, 5 Kulp 397; Emmet v. Robinson, 2 Yeates 514; Holden v. R. R. Co., 169 Pa. 1; Sloan v. Ry. Co., 225 Pa. 52.

There is no doubt about the authority of the court, where a jury is out over Sunday, considering their verdict, that upon request some part, or any part, or all of the testimony previously taken on the trial of the case in court, upon notifying the respective parties to be present: Huidekoper v. Cotton, 3 Watts 56; Com. v. Marrow, 3 Brewster 402; Com. v. Marra, 8 Phila. 440.

*Stephen H. Smith* and *David E. Kaufman,* for appellee.—A railroad company is liable for injuries resulting from the negligence, violence or carelessness of its servants, in removing from the cars a passenger who refused to pay his fare or produce a ticket: Penna. R. R. Co. v. Vandiver, 42 Pa. 365; Sharrer v. Paxson, 171 Pa. 26; Artherholt v. Erie Electric Motor Co., 27 Pa. Super. Ct. 141; Phila., Etc., R. R. Co. v. Alvord, 128 Pa. 42; McFarlan v. Pa. R. R. Co., 199 P. S. 408; Greenwood v. Union Traction Co., 30 Pa. Superior Ct. 488.

The weight of the evidence is not a question of mathematics, but depends on its effect in inducing belief: Braunschweiger v. Waits, 179 Pa. 47; Grupp v. Rapid Transit Co., 42 Pa. Superior Ct. 271; Cromley v. R. R. Co., 211 Pa. 429; Reel v. Elder, 62 Pa. 308; Kelly v. Traction Co., 204 Pa. 623; Harlow v. Homestead Boro., 194 Pa. 57; Kitler v. Street Ry. Co., 27 Pa. Superior Ct. 602; Flower v. Houghton, 12 Pa. D. R. 8.

The testimony of jurors is not admissible for the purpose of impeaching their own verdict: Cluggage v. Swan, 4 Binn. 150; Ring v. Baker, 4 W. N. C. 185; Smalley v. Morris, 157 Pa. 349; Swope v. Crawford (No. 2), 17 Lancaster Law Rev. 196; Tewksberry v. Boyle, et al., 5 Kulp 496; Megargel v. Waltz, 21 Pa. C. C. R. 633.

Judicial business in civil cases on Sunday is in violation of the rule of the common law and our statutes: Stern's Appeal, 64 Pa. 447; Rheem v. Carlisle Deposit Bank, 76 Pa. 132; Whiteside v. Flora, 12 Pa. D. R. 153.

Whatever may be the practice in other jurisdictions

it is not and has not been the practice in this county to instruct juries or to read testimony to them on Sunday.

That it is not ground for a new trial that jurors asked the officers in charge for information or testimony which the officer refused, or to which request he made no reply, has been held in the following cases: State v. Griffin, 71 Iowa 372 (32 N. W. Repr. 447); State v. Barker, 43 Kan. 262 (23 Pac. Repr. 575); State v. Stark, 72 Mo. 37.

OPINION BY MR. JUSTICE MESTREZAT, April 15, 1912:
On June 14, 1909, Albert L. Kelley, the plaintiff, purchased a ticket at Pittston for Laceyville, a station on the line of the defendant company's road beyond Tunkhannock, and boarded a train for his destination. When the conductor examined the ticket he informed the plaintiff that the train did not stop at Laceyville and that he must get off at Tunkhannock, and take a later local train for Laceyville. He punched the ticket, made an endorsement on it, and handed it back to the plaintiff. These facts are not in dispute. The plaintiff claims that as he was leaving the train at Tunkhannock he was assaulted and severely injured by the defendant's brakeman while descending the steps to the ground. He alleges that he was struck on the back of the head and pushed from the train, that his right ankle joint was sprained, the outer ligaments of the ankle were ruptured, and that he was otherwise injured. He further claims that he was assaulted by the brakeman after he had passed from the steps of the car to the ground and while he was still near the train.

The defendant admits that the plaintiff was required to leave the car at Tunkhannock, but alleges that he was not assaulted nor forcibly ejected, that he was intoxicated and, as he was descending the steps of the car, was very abusive and turned upon the brakeman, who put

his hands on the plaintiff's shoulders, turned him round, and "sent him down the steps." As to what occurred after the plaintiff reached the ground, the defendant claims that the plaintiff went some distance from the car, procured a large chunk of coal, and was in the act of striking the brakeman when the latter hit him with the ventilator stick on the hand and, as he turned, struck him on the back.

This action was brought by the plaintiff to recover damages for the injuries inflicted by the brakeman on the plaintiff as the latter was leaving the defendant's train. The jury returned a verdict in favor of the plaintiff, and from the judgment entered thereon this appeal was taken. The first and second assignments allege the court erred in refusing to grant a new trial, and this is the principal reason assigned by the defendant for the reversal of the judgment. The case was submitted to the jury in a charge to which no exception was taken, and in which the rights and duties of the passenger and the carrier were accurately and clearly defined. The learned judge charged that if the plaintiff was unlawfully assaulted by the brakeman while acting within the scope of his authority and in the performance of the duties assigned him, there could be a recovery, but if he was misconducting himself on the train, as alleged by the defendant, and the brakeman did not assault or strike him and used only such force as was reasonably necessary to get him to leave the train, the plaintiff would have no reason to complain and would have no action against the company for anything that occurred on the car or in going down the steps. As to what occurred after the plaintiff was on the ground or platform, the court instructed the jury that if he was unlawfully assaulted by the brakeman while the latter was acting within the scope of his authority, and he did not by his own unlawful act precipitate or cause the trouble, or by his negligence and conduct assist in producing it, there could be a recovery for

the injuries sustained. The jury was also told that if the injuries received were the result of the plaintiff's own negligence, violent and unlawful acts, if these contributed as a producing cause, if he was guilty of a prior assault and was hit by the brakeman, who had reason to believe from his attitude and manner and speech that he was in danger, and no more force was used than appeared to be reasonably necessary to protect himself, or eject the plaintiff from the train, there could be no recovery by the plaintiff for the injuries he sustained.

The plaintiff's own testimony fully sustained his contention as to what occurred at the time of the alleged assault. He was accompanied by his brother who purchased a ticket at the same time, entered the car with him, occupied the same seat, and was immediately in front of the plaintiff as the two were descending the car steps in leaving the train. The brother corroborated the testimony of the plaintiff as to what occurred while they were leaving the car and after the plaintiff was on the ground. They both denied that the plaintiff was intoxicated and that there was any improper conduct or unbecoming language used by him on the occasion. The plaintiff's story was further corroborated by certain admissions made by the trainmen and contradictions of each other by the defendant's witnesses. The brakeman admitted in his testimony that he pushed the plaintiff off the steps after he had threatened him. One of the physicians testified that the plaintiff had a raised lump at the base of the skull in the back of the neck, which, it is claimed, must have been produced by a blow struck while the plaintiff was descending the steps in view of the admission of the brakeman that he only struck the plaintiff twice after he had reached the ground and neither time at this place on the body.

The defendant introduced several witnesses, the greater number being employees of the company, who contradicted the testimony of the plaintiff and his

witnesses. The defendant's theory of the case was that the plaintiff was intoxicated, used abusive and unbecoming language in the car when he was informed that he must leave it because the train did not stop at Laceyville, that the brakeman did not strike the plaintiff as he was leaving the car, and that after the plaintiff had reached the ground he ran some distance, procured a lump of coal and was in the act of striking the brakeman when the latter, in self defense, struck the plaintiff with the ventilator stick. It is denied that more force was used in ejecting the plaintiff than was reasonably necessary to accomplish the purpose. There was ample testimony on the part of the defendant company to sustain its contention, and the jury would have been warranted in returning a verdict in its favor. We have carefully read the testimony and would, as a juror, have been strongly inclined to find that the defendant's contention was supported by the evidence. This, however, is not the test to be applied by an appellate court in determining whether the court below erred in refusing to grant a new trial. If it were, the judge would take the place of the jury and that tribunal would become a useless part of the machinery in the administration of justice. The only ground upon which we can reverse a court for refusing to grant a new trial is for a manifest abuse of its discretion. It is the function of the jury to determine the facts of the case; the duty of the court to determine and instruct the jury as to the law. If, therefore, there is evidence submitted sufficient to warrant the jury in finding a verdict, it cannot be set aside by an appellate court because there was conflicting testimony given by a greater number of witnesses. The weight of the evidence is not to be determined by the number of witnesses, nor is the verdict to be set aside because the greater number of witnesses testified against the finding. The credibility of witnesses is for the jury, and their manner, their motive, their bias, the inherent improbability of their story or the want of accurate

recollection may discredit their testimony and justify a jury in disregarding it altogether: Lautner v. Kann, 184 Pa. 334. The testimony of a witness when read may induce belief, but the manner and conduct of the witness on the stand may so discredit him as to justify the jury in excluding the testimony in the consideration of the case. It is the testimony impelling belief in the minds of the jury, and not the number of witnesses, which should control the decision of the disputed facts in the case.

We see no ground for convicting the court below of error in refusing to grant a new trial. There was testimony on the part of the plaintiff, which, if believed, warranted a verdict in his favor. Part of it came from eye witnesses who had an opportunity to see the whole occurrence. These witnesses were corroborated to some extent at least by other facts disclosed by the testimony. The jury, as it was their province, manifestly gave credence to the plaintiff's witnesses, and disbelieved the witnesses of the defendant so far as their testimony conflicted with the testimony of the plaintiff. There is no assignment alleging that the evidence was not sufficient to justify the court in submitting the case to the jury. The story of the plaintiff's witnesses was not an incredible one nor inherently improbable. Apparently the only reason for disbelieving it would be that it was contradicted by a greater number of witnesses called by the defendant. As pointed out above, the preponderance of witnesses in number does not necessarily determine the weight of the evidence.

We do not think the conduct of the tipstaff, alleged to be a sufficient reason for a new trial, is to be commended. It was his duty to report to the judge or the court, if in session, any reasonable request of the jury. It was not for him to determine what action the judge would take, or whether the latter would sit on Sunday for the purpose of acting on the request. It is to be presumed that the judge was accessible, and whether it

was on a weekday or a Sunday, if a request were made by the jury for further instructions, the tipstaff should have immediately communicated with the judge. But we fail to find in the testimony submitted on the rule any evidence that would warrant us in sustaining the contention of the appellant that the tipstaff was asked by the jury or any member of it to communicate a request for further instructions to the judge, and that his failure to do so had any effect on the jury. It is not at all clear from the deposition what was said by the jury to the tipstaff relative to the matter. It appears that one and possibly more of the jurors desired to be further enlightened about the testimony of a witness. But the deposition does not positively show that any one of the jurors or all of them directed the tipstaff to submit the matter to the judge. Nor does it appear that Juror Fisher told the tipstaff that his health would be endangered by the jury remaining out another night. There is no evidence to show that Fisher was not in good health and was not able for jury service. It appeared that the verdict was sealed and delivered to the court on the following day when all the jurors were present and consented thereto. Fisher made no objection to the verdict, nor did he bring to the attention of the court what was said in the jury room about the desire of the jury for further enlightenment as to the testimony of a witness. The learned judge of the court below did not consider the matter of sufficient importance to even mention it in his opinion overruling the motion for a new trial, and, in view of that fact and that Fisher's testimony does not show that the alleged misconduct of the tipstaff had any effect on the verdict, we are not inclined to sustain this reason for granting a new trial.

If technically the court should have excluded Mr. Drake's testimony as to the duties of a brakeman, it was, under the circumstances, harmless error to admit it. He testified to nothing that conflicted with the duties

prescribed by the rules of the defendant company which were in evidence. The testimony, therefore, did the defendant no harm and its admission is not a sufficient reason for reversing the judgment. The third and fourth assignments are not sustained.

The judgment is affirmed.